# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DAVID FRUNZA,<br>c/o Malik Law<br>8437 Mayfield Road, Suite #101<br>Chesterland, OH  45202 | CASE NO.:<br><br>JUDGE: |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| CUYAHOGA COUNTY<br>1219 Ontario Street<br>Cleveland, OH 44113, | |
| and | |
| KENNETH V. MILLS<br>CUYAHOGA COUNTY SHERIFF<br>1215 W 3rd Street<br>Cleveland, Ohio 44113<br>*Individually and in his official capacity as Cuyahoga County Director, Regional Corrections,* | |
| and | |
| THE METROHEALTH SYSTEM<br>2500 MetroHealth Medical Center<br>Cleveland, Ohio 44109 | |
| and | |
| MARY HANCOCK, MD<br>DEBORAH GORDON, APRN-CNP<br>ISOLDE STIPEK, RN<br>CHANDA ZITIELLO, RN<br>AMANDA SYMONS, LPN<br>AISHA PARNELL, RN | |

1

| | |
|---|---|
| **TRACY LYNN SCHAEFER, RN** | ) |
| **THE METROHEALTH SYSTEM** | ) |
| **2500 Metrohealth Medical Center** | ) |
| **Cleveland, Ohio 44109** | ) |
| *Individually and in their official capacities* | ) |
| *as Medical Staff in the Cuyahoga County* | ) |
| *Correction Center,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

## I. INTRODUCTION

1. This civil rights case challenges Cuyahoga County's, Kenneth Mills's, and The MetroHealth System's official policies regarding inmates suffering from the serious medical conditions suffered by Plaintiff David Frunza. These official policies and lack thereof were the moving force behind the constitutional violations experienced by David Frunza. There is also a custom, pattern, and practice in the Cuyahoga County Correction Center ("CCCC") of having unqualified employees, inadequate training and inadequate supervision of the CCCC's medical staff regarding inmates suffering from the serious medical conditions suffered by David Frunza. Additionally, when an inmate, such as Mr. Frunza, suffers injuries, Defendants Cuyahoga County, Kenneth Mills, and The MetorHealth System ratify the unconstitutional acts of the medical staff.

2. Furthermore, Defendants Cuyahoga County, Kenneth Mills, and The MetroHealth System failed to provide constitutionally adequate medical care and medical care consistent with community standards of care to David Frunza.

3. Furthermore, Defendants Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer all failed to provide constitutionally adeqaute medical

2

        care and medical care consistent with community standards of care to David Frunza.

4. This case also challenges Defendants Cuyahoga County, Kenneth Mills, The MetroHealth System, Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer's deliberate indifference to Mr. Frunza's serious medical condition. Defendants knew that Mr. Frunza suffered from a serious life-threatening medical condition while in the CCCC, and deliberately disregarded the life-threatening risks to him. In addition, the seriousness of Mr. Frunza's condition and his need for immediate medical care was obvious even to a lay person. These Defendants' deliberate indifference to Mr. Frunza's serious medical needs and their negligence in providing medical care to Mr. Frunza proximately caused him to suffer from a serious, life-threatening, and dangerous spinal abscess. As a direct and proximate cause of the deliberate indifference and negligence, Mr. Frunza suffered severe and debilitating pain and suffering as well as severe and permanent injuries which required surgery and will require future medical treatment.

5. Mr. Frunza was finally sent to the hospital where he underwent surgery to treat the serious, life-threatening, and dangerous spinal abscess. Instead of receiving proper medical attention at the CCCC, Mr. Frunza's constant pleas for help were consciously disregarded despite severe and obvious signs and symptoms that he was in grave danger.

## II. JURISDICTION

6. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law

claims is conferred by 28 U.S.C. §1367. Venue is proper in this Division.

### III. PARTIES

7. David Frunza was a resident of Parma Heights, Ohio and Cuyahoga County, Ohio at all times relevant to this lawsuit. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution.

8. Defendant Cuyahoga County is a unit of local government organized under laws of the State of Ohio. Defendant Cuyahoga County is also a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

9. Defendant Kenneth Mills was at all times herein the Director, Regional Corrections Cuyahoga County Sheriff's Department. Defendant Mills was at all times responsible for reviewing all Use of Force incidents to ensure compliance with the facility's policies. He is sued in his official and individual capacities. Mills is a "person" under 42 USC 1983 and at all times relevant to this case acted under color of law. Mills is a final policymaker.

10. Defendant The MetroHealth System is and was all times relevant to this action the contracted party providing through its medical professionals, necessary, regular, and routine medical services, examinations, and treatment to the inmates of the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

11. Defendant Mary E. Hancock, is and was at all times relevant to this action a doctor employed by The MetroHealth System in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

12. Defendant Deborah Gordon, APRN-CNP, is and was at all times relevant to this action a nurse in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

13. Defendant Isolde Stipek, RN, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

14. Defendant Chanda Zitiello, RN, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

15. Defendant Amanda Symons, LPN, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

16. Defendant Aisha Parnell, RN, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

17. Defendant Tracy Lynn Schaefer, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and

official capacity.

## IV. FACT

**A. Plaintiff David Frunza went to MetroHealth in August 2018 where medical staff determined that he had an epidural abscess.**

18. In August 2018, Plaintiff David Frunza went to MetroHealth Emergency Department where he complained of worsening mid back pain that had persisted for longer than 1 week.

19. In the Emergency Department, an MRI was performed which demonstrated an epidural abscess and discities at T9/T10.

20. Mr. Frunza was given an IV of vancomycin and admitted.

21. Orthopedics was consulted who recommended medical management and no surgical intervention unless Mr. Frunza's exam changed.

22. Infectious Disease was also consulted and they recommended keeping Frunza on IV Vancomycin and Ceftazidime. Infectious Disease also recommended a Peripherally Inserted Central Catheter ("PICC") line and prolonged IV antibiotics for medical management of epidural abscess.[1]

23. All of this information was entered into Mr. Frunza's MetroHealth medical records which are accessible to medical staff in the CCCC.

24. Mr. Frunza chose to take prescription antibiotics instead of the PICC line as he wanted to be with his family and did not like the idea of being at a nursing facility.

25. Mr. Frunza's case was discussed with Infectious Disease and he was discharged on Oral Bactrim and Oral Ciprofloxacin.

---

[1] A **PICC line** is a thin, soft, long catheter (tube) that is inserted into a vein in your child's arm, leg or neck. The tip of the catheter is positioned in a large vein that carries blood into the heart. The **PICC line** is used for long-term intravenous (IV) antibiotics, nutrition or medications, and for blood draws.

26. During the August 2018 stay at MetroHealth, critical care time was provided by Marissa Koning, MD for 30 minutes. "Critical care was necessary because of an illness or injury that acutely impaired one or more vital organs systems such that there was a high probability of imminent or life threatening deterioration in the patient's condition. The critical illness/injury acutely impaired the following organ systems: Central Nervous and Musculoskeletal."

27. The risks of untreated spinal infection include paralysis, paraplegia, sepsis, and death.

**B. From October 11, 2018 to November 22, 2018 Plaintiff David Frunza suffered from a serious, painful, dangerous and potentially deadly condition and nothing was done by the Medical Defendants.**

28. On October 11, 2018, Mr. Frunza was booked into the CCCC.

29. On October 11, 2018 at 5:29 pm, CCC Prisoner Health Appraisal was completed on Plaintiff David Frunza by Defendant Isolde Stipek, RN.

30. Mr. Frunza reported that in August 2018, he was diagnosed at MetroHealth with a spinal abscess.

31. The August 2018 MetroHealth records were easily accessible to Defendant Stipek to confirm Mr. Frunza's report.

32. On October 11, 2018 at 5:30 pm, "Inmate will be seen I medical for abscess on back with drainage, heroin and Xanax abuse. Spoke with charge nurse." Isolde Stipek, RN

33. It is well-known in the medical community that the risks of untreated spinal infection include paralysis, paraplegia, sepsis, and death.

34. On October 11, 2018 at 6:03 pm, Defendant Chanda Zitiello, RN, saw Mr. Frunza for his complaints of severe pain due to a spinal abscess. Defendant Zitiello noted that there were no open back wounds and Mr. Frunza explained to her that his abscess was

7

internal.

35. Defendant Zitiello accessed Mr. Frunza's MetroHealth records and confirmed that he was currently treated at MetroHealth for an epidural abscess.

36. Defendant Zitiello gave Mr. Frunza Tylenol and told him he was scheduled to see a provider.

37. On October 12, 2018 at 8:05 am, Mr. Frunza was again complaining of the excruciating pain he was experiencing due to the epidural abscess.

38. On this day, he was placed on sick call list for draining abscess on back and seen by Defendant Deborah Gordon, APRN-CNP. Mr. Frunza again explained that his abscess was internal.

39. Defendant Gordon ignored Mr. Frunza's pleas for help and noted that Mr. Frunza was "[e]xamined by nurse yesterday, no back wound or abscess was noted." She then acknowledged that Mr. Frunza MetroHealth chart demonstrated that he had been admitted to Metro on 8/3/2018 for a thoracic epidural abscess.

40. However, Defendant Gordon's and Zitiello's disregard for Mr. Frunza's serious medical concerns are further demonstrated by the October 11, 2018 note which reads: "Per nurse Zitello, he was upset because he didn't want to lay on a mat on the floor."

41. On October 13, 2018 at 4:04 pm a medical emergency was called for Mr. Frunza. When Defendant Amanda Symons arrived, Mr. Frunza was laying on the floor and told Defendant Symons that he fell due to abscess on his spine. Mr. Frunza begged to be sent to the hospital due to the seriousness risks of an untreated spinal abscess.

42. Defendant Symons completely disregarded the serious and potentially deadly health risks to Mr. Frunza and advised him that he needs to follow up upon release.

43. By this time, Mr. Frunza is not able to steadily walk on his own so he "then began to beg for a wheelchair." Defendant Symons told Mr. Frunza that a wheelchair is not indicated at this time and she cleared him to return to pod.

44. Mr. Frunza had been placed on the sick call list due to his spinal abscess on or about October 11, 2018.

45. On October 16, 2018, Defendant Mary E. Hancock added Progress Notes to Mr. Frunza's medical records: "Inmate on sick call list for 'spinal abscess.' Records reviewed. See previous notes. Cart nurse to evaluate. No further treatment indicated."

46. Despite Mr. Frunza's history from August 2018 and his very serious signs and symptoms, Defendant Hancock completely disregarded the serious medical risks to Mr. Frunza including but not limited to paralysis, paraplegia, sepsis, and death.

47. On October 16, 2018 at approximately 4:53 pm, another medical emergency was called for Mr. Frunza. Mr. Frunza, unable to walk steadily and denied a wheelchair had fallen again.

48. Defendant Zitiello arrived and again ignored Mr. Frunza's desperate pleas to go to the hospital for his spinal abscess.

49. Defendant Zitiello's conscious disregard for Mr. Frunza's serious medical needs are further demonstrated by her charting that "Inmate upset that he is laying on the floor. Demanding to be sent to hospital for his back abscess. When asked why he did not address this issue prior to jail, inmate stated he was going to go the day he was arrested. Advised to f/u upon release."

50. During this time, Mr. Frunza's mother began to become seriously concerned that her son was suffering from a life-threatening infection in his spine and was being ignored.

After contacting the CCCC to get her son proper medical care, she desperately reached out to Mr. Frunza's criminal defense attorney, John Spellacy, to see if he was able to help her son.

51. On October 29, 2018, Attorney Spellacy's office called the CCCC expressing concern for Mr. Frunza and his spinal infection not being treated.

52. Defendant Aisha Parnell, RN, reviewed Mr. Frunza's chart which clearly showed that Mr. Frunza's serious medical needs were being completely ignored, yet returned the call to Spellacy's Office and "advised that all of inmates' medical needs have been addressed at this time."

53. On November 10, 2018 at approximately 2:30, a medical emergency was called for Mr. Frunza. Defendant Tracy Lynn Schaefer arrived and found Mr. Frunza laying on bunk crying. Mr. Frunza told Defendant Schaefer that he had an abscess on his back. At this point, the pain was so extreme and his condition was worsening so progressively that Mr. Frunza believed he was going to die.

54. Defendant Schaefer witnessed Mr. Frunza's need to be assisted into a wheel chair before he was taken to the dispensary.

55. Mr. Frunza again explained he had a spinal abscess and that he needed to go to the hospital. Mr. Frunza was in severe pain, his condition was worsening, and he was obviously in need of emergent medical care. Despite this, Defendant Schaefer gave Mr. Frunza a heat pack and noted that Mr. Frunza was kept in the infirmary for observation. However, there is nothing in the records that Mr. Frunza was further observed in the infirmary.

**C. Plaintiff David Frunza was finally sent to the hospital.**

56. On November 22, 2018, Nurse Raymond Jontony, RN, arrived on the housing unit and found Mr. Frunza unable to move due to severe back pain. Mr. Frunza told Jontony that he had a history of a spinal abscess.

57. Nurse Jontony recognized the severity of Mr. Frunza's condition and that Mr. Frunza was unable to walk so he instructed Mr. Frunza be transferred to dispensary via stair chair and placed on gurney.

58. Mr. Frunza begged to go to the hospital for his spinal abscess. He knew the risks of an untreated spinal infection were paralysis, paraplegia, sepsis, and even death.

59. Nurse Jontony reviewed Mr. Frunza's chart which clearly showed as it did to all of the medical defendants, that Mr. Frunza had a history of thoracid epidural abscess and was treated at MetroHealth in August 2018.

60. Nurse Jontony notified Dr. Tallman who ordered Mr. Frunza be sent out via EMS for acute/severe back pain to rule out epidural abscess/treatment/imaging.

61. EMS arrived in the dispensary at approximately at 8:18 pm to take Mr. Frunza to the hospital.

62. That night, on November 22, 2018, Mr. Frunza was admitted to MetroHealth with a diagnosis of an epidural abscess.

63. On November 22, 2018, MetroHealth records indicated "significant interval worsening of discitis/osteomyelitis. There is now diffuse signal abnormality with enhancements of the T9 and T10 vertebral bodies and posterior elements suggestive of progression of infection. New signal abnormality enhancement extending anteriorly to the vertebral bodies lifting the anterior longitudinal ligament."

64. MetroHealth records further indicated: "Interval worsening of epidural signal

abnormality enhancement along the anterior and posterior epidural space. The phlegmon exerts local mass effect with indentation and minimal compression of the spinal cord."

65. Mr. Frunza was kept on IV fluids, and he was seen by Neurosurgery, where they determined that a thoraco-lumbar decompression/fusion with tissue cultures, with Pedical screws was necessary.

66. On November 23, 2018, Mr. Frunza's surgery was performed where he had to be closely monitored for worsening sepsis.

67. On November 30, 2018, Mr. Frunza was admitted to The Elisabeth Severance Prentiss Center for Skilled Nursing Care with a primary diagnosis of epidural abscess.

68. Mr. Frunza suffered excruciating pain and severe emotional distress and mental anguish while he was left untreated in the CCCC for 42 days.

**D. Policies, Practices, and Culpable Conduct**

69. It is well known in medicine and nursing that an untreated spinal infection can lead to paralysis, paraplegia, sepsis, and death.

70. A patient with a history of epidural abscess who is complaining of severe back pain should be taken seriously.

71. It is well known in medicine and nursing that an MRI is the best and most accurate way to detect an epidural abscess.

72. It is well known in medicine and nursing that a visual observation of the exterior of a patient's spine is not an accurate way to detect an epidural abscess and/or spinal infection.

73. It is well known in medicine and nursing that a spinal infection can be a serious and

12

life-threatening condition.

74. It is well known by all Defendants that the CCCC is not equipped to detect, diagnose, or treat an epidural abscess and/or spinal infection.

75. CCCC records exist that clearly establish that it was obvious that Mr. Frunza was suffering from a serious and dangerous medical condition while in custody from October 11, 2018 to November 22, 2018.

76. The severity of Mr. Frunza's condition was so obvious that medically untrained corrections staff and inmates recognized Mr. Frunza's need for urgent medical care from October 11, 2018 to November 22, 2018.

77. Defendants , Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer all had access to Mr. Frunza's prior medical records which demonstrated that he was telling the truth about his stay at MetroHealth in August 2018 for an epidural abscess.

78. Defendants , Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer were all subjectively and objectively aware of Mr. Frunza's serious medical condition and need for medical attention, yet they failed to provide and seek proper medical attention for Mr. Frunza.

79. Defendants Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer all knew that Mr. Frunza was reporting very serious and concerning signs and symptoms of a spinal infection.

80. These Defendants ignored Mr. Frunza's obvious need for medical care and disregarded his pleas for help. Instead Defendants determined that Mr. Frunza was mad that he was on a cot on the floor, that he was lying, and that his serious medical condition was a result of his own actions and/or inactions.

81. Despite a duty to provide Mr. Frunza with constitutionally adequate care and care consistent with community standards, Defendants repeatedly told Mr. Frunza to seek treatment upon his release from the CCCC while they withheld proper treatment.

82. Defendants , Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer knew that Mr. Frunza the signs and symptoms reported and displayed by Mr. Frunza are a serious medical problem with a substantial risk of severe and life-threatening complications including death.

83. Defendants , Dr. Mary Hancock, Nurse Deborah Gordon, Nurse Isolde Stipek, Nurse Chanda Zitiello, Nurse Amanda Symons, Nurse Aisha Parnell, and Nurse Tracy Lynn Schaefer were deliberately indifferent to the serious medical conditions and the substantial risk of harm to Mr. Frunza, and consciously disregarded the risk of severe and permanent harm to Mr. Frunza.

84. Defendants Cuyahoga County, Kenneth V. Mills, and The MetroHealth System failed to have adequate policies, procedures, customs, protocols, and usages regarding the provision of medical care, identification, referral, and treatment for inmates with the serious signs and symptoms displayed by Mr. Frunza. These inadequate policies, procedures, customs, protocols, and usages were the moving force behind the constitutional violations and harms suffered by Mr. Frunza.

85. Defendants Cuyahoga County, Kenneth V. Mills, and The MetroHealth System were deliberately indifferent to the serious medical needs of Mr. Frunza by failing to train and supervise staff to implement adequate medical policies, procedures, customs, protocols, and usages that would properly address the obvious and known health and safety risks experienced by Mr. Frunza.

86. All Defendants acted negligently, maliciously, recklessly, willfully, wantonly, intentionally, and with deliberate indifference to the serious medical needs of Mr. Frunza.

87. The conduct of all Defendants shocks the conscience, violates the standards of decency in an evolving society, and betrays the trust that the public places in medical staff to provide proper medical are to those in custody.

88. Defendants Cuyahoga County, Kenneth V. Mills, and The MetroHealth System ratify the unconstitutional acts of its medical staff when severe harm happens to inmates such as Mr. Frunza.

89. As a direct and proximate result of all Defendants' conduct, Mr. Frunza suffered pain, suffering, and severe and permanent damages.

90. As a further direct and proximate result of Mr. Frunza's epidural abscess and spinal infection being left untreated, he suffered severe pain, severe and permanent physical damage, severe and permanent emotional distress, loss of income, loss of future earnings. He has incurred medical bills and treatment and will incur additional medical bills and treatment in the future.

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION – 42 U.S.C. §1983**

91. Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

92. Defendants have, under color Defendants have, under color of state law, deprived Mr. David Frunza of rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the U.S. Constitution, including, but not limited to the right to be free from cruel and unusual punishment and the right to receive adequate medical care as an individual in the custody of a correctional institution.

93. Defendants were each deliberately indifferent to Mr. Frunza's serious medical condition.

94. Defendants knew and/or witnessed Mr. Frunza experience and suffer from severe, serious, dangerous, and life-threatening symptoms when he begged for help and warned Defendants he had a spinal abscess and needed to go to the hospital.

95. Defendants knew that inmates who, like Mr. Frunza, display the signs and symptoms of Mr. Frunza have serious medical needs that require adequate and emergency medical care.

96. Despite knowledge, Defendants failed to provide Mr. Frunza with constitutionally adequate care.

## SECOND CAUSE OF ACTION– MONELL CLAIM
(Defendants Cuyahoga County, Kenneth V. Mills, and The MetroHealth System)

97. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

98. Defendants Cuyahoga County's, Mills's and The MetroHealth System's policies, practices, customs, protocols, and usages regarding the care and treatments of

individuals in the CCCC's custody were and are a moving force behind the constitutional violations suffered by Mr. Frunza.

99. Defendants Cuyahoga County, Mills, and The MetroHealth System failed to train and supervise medical staff.

100. Defendants Cuyahoga County, Mills, and The MetroHealth System failed to enforce policies, procedures, customs, usages, practices and protocols regarding proper care and treatment of individuals in institutional custody.

101. Defendants Cuyahoga County, Mills, and The MetroHealth System have not disciplined Defendants Hancock, Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer for their failure to properly treat Mr. Frunza.

102. An investigation into the events involving the Plaintiff David Frunza, were so incomplete and inadequate as to constitute a ratification by the Defendants Cuyahoga County, Mills, and The MetroHealth System of these Defendants' conduct.

103. The training and supervision provided by Defendants Cuyahoga County, Mills, and The MetroHealth System to Defendants Hancock, Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer was deliberately indifferent to the safety of the citizens, including citizens such as Mr. Frunza.

### THIRD CAUSE OF ACTION– NEGLIGENCE/MALPRACTICE BY NURSES
**(Defendants Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer)**

104. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

105. Defendants Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer owed a duty of reasonable care to Mr. Frunza.

106. Defendants Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer breached their duty to provide to Mr. Frunza reasonable nursing care consistent with standard medical practices in violation of Ohio law. (Affidavit of Merit Pursuant to Ohio Rule 10(D)(2).)

107. The conduct of Defendants Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer was negligent, malicious, willful, wanton, and reckless.

108. The conduct of Defendants Gordon, Stipek, Zitiello, Symons, Parnell, and Schaefer proximately caused Mr. Frunza's severe physical and psychological pain and suffering.

### FOURTH CAUSE OF ACTION– NEGLIGENCE/MALPRACTICE BY PHYSICIAN
**(Defendant Mary Hancock, MD)**

109. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

110. Defendant Hancock owed a duty of reasonable care to Mr. Frunza.

111. Defendant Hancock failed to use reasonable care in diagnosing and treating the symptoms experienced by Mr. Frunza.

112. Defendant Hancock breached her duty to provide to Mr. Frunza reasonable medical and dental care consistent with standard medical practices in violation of Ohio law. (Affidavit of Merit Pursuant to Ohio Rule 10(D)(2).)

113. The conduct of Defendant Hancock was negligent, malicious, willful, wanton, and reckless.

114. The conduct of Defendant Hancock deviated from the standard medical practices, all in violation of Ohio Law.

115. Defendant Hancock's conduct proximately caused Mr. Frunza's severe and physical and psychological pain and suffering.

## VI. JURY DEMAND

116. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.     Award Plaintiff compensatory damages in an amount to be shown at trial;

B.      Award Plaintiff punitive damages in an amount to be shown at trial (except as against the County);

C.     Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.     Award Plaintiff pre and post judgment interest;

E.     Grant Plaintiff such additional relief as the Court deems just and proper.

/s/ Sara Gedeon
Malik Law
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road, Suite #101
Chesterland, Ohio 44026
440-729-8260
440-490-1177
Dbm50@sbcglobal.net
sgedeon1021@gmail.com

JOHN J. SPELLACY (0065700)
323 W. Lakeside, Suite 300
Cleveland, Ohio 44113
Ph. (216) 241-0520
Fax: (216) 241-6961
jspellacy@spellacylaw.com
**Attorneys for Plaintiff**
